UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BENJAMIN DOZIER | No. 3:24cr116 (MPS) |

**RULING ON MOTIONS TO SUPPRESS**

On May 14, 2024, Defendant Benjamin Dozier was arrested on a criminal complaint for Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. ECF No. 1. On May 22, 2024, a federal grand jury returned an indictment charging him with Conspiracy to Distribute and to Possess with Intent to Distribute Fentanyl, Cocaine, and Heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). ECF No. 18. The defendant, proceeding pro se with the assistance of standby counsel, challenges the search warrants to search a vehicle the Government claims was his and a U-Haul storage unit the Government claims he rented. As to the vehicle warrant, he moves to suppress a receipt for a U-Haul storage unit that was seized from the vehicle on the grounds that it was outside the scope of the warrant. ECF No. 238. As to the storage unit warrant, he argues that the warrant affidavit contained incorrect information and seeks a hearing pursuant to *Franks v. Delaware*, 439 U.S. 154 (1978). ECF No. 325. On December 16, 2025, I held a telephonic status conference regarding the motions during which I heard argument from the parties. For the reasons set forth below, the Defendant's motions to suppress are denied and no evidentiary hearing is necessary. I assume the parties' familiarity with the briefs and set forth only as much information as is necessary to understand the basis for this ruling.

I.   **LEGAL STANDARD**

The Fourth Amendment protects persons against "unreasonable searches and seizures" by requiring that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  A warrant therefore "may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)). A warrant "limit[s] the scope of the search to places described with particularity or 'the persons or things to be seized' in the warrant. U.S. Const. amend. IV." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 157, 170 n.7 (2d Cir. 2008).

II.   **DISCUSSION**

A.   **The Lexus**

On May 10, 2024, Stamford police officers Michael Spinosa and Timothy Speer, then assigned to the Stamford Police Narcotics and Organized Crime Unit, submitted a twelve-page affidavit in support of a search warrant to search a vehicle the Government claims is Dozier's, a black Lexus.  State of Connecticut Superior Court Judge Peter A. McShane issued the search warrant, which was executed May 14, 2024.  The warrant authorized officers to search the vehicle for

> Fentanyl, cutting agents, instruments used to package, weigh, dilute, ingest, inject, or smoke drugs, scales, measuring devices, monies, and written records pertaining to the sales of narcotics, mail, correspondence and or any identification pertaining to the suspect(s) involved in this investigation, telephone records, bank records, and/or safes, safe deposit keys, electronic devices, such as cellular phones/pagers used for communication of drug operatives, firearms, firearm ammunition, and firearm accessories.

ECF No. 290-1.

During the search of the vehicle, officers located a receipt from U-Haul Storage of Bridgeport, 526 Pine Street, Bridgeport, Connecticut 06605. The receipt lists the customer as Benjamin Dozier, 65 Houston Terrace, Stamford, Connecticut with a phone number of 475-201-8597.

The Defendant argues that the Court should suppress the receipt because it was beyond the scope of the warrant. ECF No. 238 at 2; ECF No. 304 at 13-15. He maintains that "the receipt for the storage unit was not identified in the warrant as an item to be seized" and that the officers exceeded the scope of the warrant. *Id.* at 3.

The Government argues that the receipt is within the scope of the warrant because it is a "written record pertaining to ... any identification pertaining to the suspect(s) involved in this investigation." The Government asserts that the receipt is evidence of the defendant's identity and points out that the document lists the customer as Benjamin Dozier, with an address on Houston Avenue, which was an address the defendant used for his car registration. The receipt bears his signature and contains the last four digits of his debit card. In addition, it shows his cell phone number, which corroborates that it was his phone that was intercepted during the wiretapped communications with Canada, an individual the warrant affidavit showed was a narcotics trafficker. The receipt also confirms that the defendant used the Lexus, which had been observed on March 15, 2024 next to Canada's car in the parking lot of a McDonald's in Bridgeport.

"Warrants must be read in a common sense and practical fashion and not in an overly-technical manner." *United States v. Triumph Cap. Grp., Inc.*, 211 F.R.D. 31, 57 (D. Conn. 2002). "[T]he question whether the evidence seized falls within the scope of the warrant ultimately turns on the substance of the item seized and not the label assigned to it by the defendant." *United States*

3

*v. Miller*, 2013 WL 6145765, at *4 (W.D.N.Y. Nov. 21, 2013) (internal quotation marks and citations omitted).

Here, for the reasons stated by the Government, I find that the storage unit receipt falls within the scope of the warrant as evidence pertaining to the identification of a suspect involved in this investigation, namely, Mr. Dozier, and that its seizure does not violate the Fourth Amendment.[1]

**B.     U-Haul Storage Unit**

On May 15, 2024, Stamford police officers applied for a search warrant to search the defendant's U-Haul storage unit, unit 1202, at 526 Pine Street in Bridgeport, Connecticut. ECF No. 290-2. State of Connecticut Superior Court Judge Tracy Dayton issued the search warrant for on May 15, 2024.

The Defendant argues that the Court should suppress evidence seized from his U-Haul storage unit because the search warrant affidavit contained false statements.

Under *Franks v. Delaware*, a defendant may challenge the validity of a search warrant alleged to contain deliberately or recklessly false or misleading information. 438 U.S. at 154. To obtain an evidentiary hearing on a claimed *Franks* violation, a defendant must make a "substantial preliminary showing" that (1) "a false statement ... was included by the affiant in the warrant affidavit," (2) the affiant made the false statement "knowingly and intentionally, or with reckless disregard for the truth," and (3) the allegedly false statement was material, meaning it was "necessary to the finding of probable cause." *Id*. at 155-56.

---

[1] Dozier argues that "had the government and its agents not illegally seized the receipt, there would have never been a warrant issued for the storage unit." ECF No. 304 at 14. Because the receipt was within the ambit of the warrant, however, the Defendant's argument that the evidence subsequently seized from the U-Haul storage unit should be suppressed as "fruit of the poisonous tree," fails. ECF No. 238 at 3.

"With respect to knowledge, [a]llegations of negligence or innocent mistake are insufficient." *United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (internal quotation marks and citations omitted). "As for materiality, the alleged falsehood or omission should be set aside and the remaining portions of the affidavit should be reviewed ... to determine if probable cause still exists." *Id.* (internal quotation marks and citations omitted). "If after doing so there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.... But if the remaining content is insufficient, the defendant is entitled ... to [a] hearing." *Id.* (internal quotation marks and citations omitted). "[T]he substantial preliminary showing standard imposes a 'high' burden on [a defendant]." *Id.* at 86.

The defendant asserts that the warrant affidavit contained false information about the U-Haul receipt previously seized from his car in paragraph 24 and about his surveilled activities in paragraphs 15 and 29. ECF No. 304, 325. As to the U-Haul receipt, the warrant affidavit states

> 24. During a search of the vehicle Officers located a customer receipt from U-Haul Storage of Bridgeport, 526 Pine Street, Bridgeport, CT 06605. The receipt lists the customer as Benjamin Dozier, 65 Houston Terrace, Stamford, CT with a phone number of 475-201-8597. The receipt indicates that a storage unit #1202 was rented out in Dozier's name on 5/10/2024. The receipt indicates that the unit was paid for and rented through 6/2/2024.

ECF No. 290-2 at 8. It is undisputed, however, that the dates on the receipt seized from the defendant's vehicle are different from what is represented in the affidavit – specifically, the receipt seized from the vehicle shows that the defendant rented the storage unit from 2/3/24 through 3/2/24 whereas the warrant affidavit states that the receipt shows that the defendant rented the storage unit from 5/10/24 through 6/2/24. ECF No. 325-1 (copy of receipt).

Dozier argues that "[w]hile the receipt dates in the affidavit are close in time to the issuance of the warrant," the actual dates "are over 60 days before the issuance of the warrant and subsequent search." ECF No. 325 at 2. As noted, Judge Dayton issued the warrant on May 15,

5

2024. He contends that "there would be no reason to believe that [he] would have a rental interest in storage unit 1202 on May 15, 2024 when his rental interest expired on March 3, 2024 according to the receipt." ECF No. 325 at 2. The defendant asserts that the information in the affidavit was "stale" and "no probable cause existed at the time of the search." *Id.*

In addition, during argument and in his papers, Dozier argued that the Government's own investigative report contained an account of surveillance that contradicted the agents' averments in the warrant affidavit. Specifically, he pointed to a Drug Enforcement Administration report stating that on March 15, 2024, "[a]t approximately 10:36a.m.," immediately after the alleged transaction in the McDonald's parking lot between Dozier and co-defendant Rodney Canada, "Lt O'Brien observed" Dozier's Lexus exit the McDonald's parking lot and "enter a gas station" on Fairfield Avenue in Bridgeport and then exit the gas station. Agent notes provided by the Government after the oral argument say that after Dozier exited the gas station, "surv is cut off," which I take to mean "surveillance is cut off." Dozier argues that this contradicts the following averment in paragraph 29 of the warrant affidavit: "After the suspected narcotics transaction [on March 15, 2024] TFO Martinez conducted mobile surveillance of Dozier" and "followed Dozier to the area of Pine Street in Bridgeport," which is the same street on which the U-Haul storage facility was located. The affidavit goes on to state that "TFO Martinez observed Dozier operating his vehicle at a high rate of speed and eventually lost Dozier in the area of Pine Street." ECF No. 290-2 at 9.

These statements are not necessarily contradictory because the surveillance that was "cut off" might have been just O'Brien's, and Martinez could have picked up the surveillance later; there are no times specified in the affidavit, and it is not clear how long "after the suspected narcotics transaction" Martinez supposedly made his observations. But I find that Dozier has

6

identified a genuine discrepancy in the Government's papers – specifically TFO Martinez's observations that took place "after the suspected narcotics transaction" in paragraph 29 of the affidavit.

Dozier also argues that the information in the warrant affidavit concerning the agents' April 7, 2024 surveillance of him and Canada is contradicted by evidence produced in discovery. Specifically, he contends that a surveillance video (USAO 8354) shows that, contrary to the averments in paragraph 15 of the affidavit, he did not exit his car or enter Canada's car while in the parking lot at 352 Glenbrook Road and that the two vehicles were next to each other only for a minute or two rather than the 15 minutes alleged in the affidavit. I agree with Dozier that the surveillance video (USAO 8354) does not show that he exited his vehicle and that the time captured by the video during which the two vehicles were parked next to each other (facing in opposite directions, as the warrant avers) could not have been much longer than a minute. But it appears from agent notes produced by the U.S. Attorney's Office (USAO 8829-8832) that the surveillance video showed only part of the interaction between Dozier and Canada. Specifically, the agent notes indicate that, at 12:22pm on April 7, 2024, Canada's vehicle arrived in the parking lot and parked "window to window w/Dozier," which is consistent with what is shown in the surveillance video. The notes then indicate, however, that Canada and Dozier moved their vehicles a minute later: "12:23[pm:] Canada and Dozier Both Pull behind building (352 Glenbrook)." This statement is consistent with the video, which, just before it cuts off, shows the Toyota Camry, which the agents aver was Canada's car, begin to move out of the parking space. (USAO 8354). The notes also indicate that, at 12:39pm, "Both vehicles pull out of lot together (Dozier out of Canada's car back into his)." This account is roughly consistent with both the DEA report provided in discovery (USAO 199-202) and the warrant affidavit. (USAO 8126). Both of those

7

documents, though not mentioning the part about the vehicles driving behind the building, say that sometime after the two arrived at the parking lot, Dozier entered the passenger side of Canada's car, exited after about 15 minutes, re-entered the Lexus, and departed the area. See USAO 8126 & USAO 200.

After considering this evidence, I do not discern a significant contradiction between the surveillance as described in paragraph 15 of the search warrant affidavit and the surveillance as depicted in the video, especially when the video is considered together with the agent notes and DEA report; any contradictions that exist are plainly immaterial. Nevertheless, in an abundance of caution, I will omit the references to Dozier's entering Canada's vehicle and meeting with him for 15 minutes in my analysis of the "corrected affidavit" below.

### The "Corrected" Affidavit Supports Probable Cause

The Defendant fails to satisfy the high burden necessary for a *Franks* hearing. I need not determine whether the challenged statements were made knowingly or intentionally, or with reckless disregard for the truth, because Dozier has failed to make a substantial preliminary showing that these statements are material to a determination of probable cause. That is, even when I omit TFO Martinez's observations about what took place "after the suspected narcotics transaction" in the two final sentences of ¶ 29 of the affidavit, the statement in ¶ 15 of the search warrant affidavit that Dozier exited his vehicle and entered Canada's vehicle, and add the correct dates of the receipt, the "corrected affidavit" includes sufficient information to support a finding of probable cause.

After Dozier's arrest on May 14, 2025, Stamford police officers Michael Spinosa and Timothy Speer, then assigned to the Stamford Police Narcotics and Organized Crime Unit, submitted a fourteen-page affidavit in support of a search warrant to search Dozier's U-Haul

storage unit, unit #1202. ECF No. 290-2. In the affidavit, the officers detailed their qualifications and experience in narcotics investigations. *Id.* ¶ 1. They stated that the facts in the affidavit came from their personal knowledge and efforts as well as the efforts of other officers of the Narcotics and Organized Crime Unit. *Id.* The affiants provided background information on the ongoing investigation involving federal, state and local law enforcement agencies into a drug trafficking organization in Stamford. *Id.* ¶¶ 2. The affidavit stated that Rodney Canada had been under investigation for distribution of wholesale quantities of crack cocaine, powder cocaine, and heroin. *Id*. ¶¶ 2-6. The affiants stated that beginning in February 2024, Canada was the subject of a federal wiretap. *Id*. ¶¶ 3-6.

The affiants averred that on March 7, 2024, investigators conducted a "wall off" stop in Stamford of a customer of Canada's named Shantz in which they seized two bags containing cocaine and eleven bags of fentanyl. *Id.* ¶ 9. The bags were stamped with the label "Blackjack." *Id*. The affidavit stated that after his arrest, Shantz indicated that he had ordered a bundle of fentanyl and two $50 bags of cocaine from Canada. *Id*. The affidavit further stated that Shantz said that he had been ordering drugs from Canada for approximately 45 days and estimated that he had spent approximately $5,000 to purchase primarily fentanyl and cocaine from Canada over the course of the last thirty days. *Id*. Shantz was subsequently released following his arrest. *Id*. The affidavit detailed a subsequent intercepted communication on March 13, 2024 between Shantz and Canada in which Canada called Shantz and told him, "I didn't grab yet. I'm 'bout to grab it today, though" to which Shantz responded, "Nah, nah, I need soft." *Id.* ¶ 10. The affiants explained that based on their training and experience, they believed that when Canada said "I'm 'bout to grab today," he was telling Shantz that Canada needed to obtain more fentanyl. *Id.* The affiants further

9

stated that they believed Shantz's response of "Nah, nah, I need soft" meant that he wanted cocaine. *Id.*

The affidavit stated that Dozier operated a 2015 black Lexus. *Id.* ¶ 16. The affiants stated that on the morning of March 15, 2024, while conducting surveillance, investigators observed Canada enter the parking lot attached to the McDonald's restaurant located at 1900 Fairfield Avenue in Bridgeport and back into a parking space. *Id.* ¶ 10. A few minutes later, investigators observed Dozier, driving a black Lexus, enter the parking lot and park next to Canada. *Id.* Investigators then observed Dozier exit the Lexus and enter the passenger seat of Canada's vehicle. *Id.* Moments later, Dozier exited Canada's car and got into his own. *Id.* ¶ 11. They each then drove away. *Id.*

According to the affiants, immediately following this meeting, Canada sent Shantz a text that stated "Black Jack back." *Id.* ¶ 12. As noted, the fentanyl that Canada had sold to Shantz had been stamped "Blackjack." *Id.* The affiants concluded that Canada met Dozier to receive a quantity of fentanyl that was either already stamped or was going to be stamped with the "Blackjack" logo by Canada or one of his co-conspirators. *Id.* Canada sent additional intercepted communications to other customers stating "Black Jack back." *Id.*

The affidavit states that Dozier used telephone number (475) 201-8597 to communicate with Canada for the purpose of conducting drug related business. *Id.* ¶ 8. The officers averred that in an intercepted call on April 7, 2024 between Canada and Dozier, Dozier stated that "I got the Jack now too," which they believed meant that he had available fentanyl stamped with Blackjack. *Id.* ¶¶ 13-14. In that conversation, Canada told Dozier to "come now" to "Mom dukes." *Id.* ¶ 14. After the call, Dozier was observed arriving at Canada's mother's apartment building on Glenbrook Road in Stamford in his Lexus and parking in the parking lot of the apartment building.

*Id.* ¶ 15.  Canada was then observed arriving in his vehicle, which he parked next to Dozier so that both driver's side windows were facing each other.  *Id.*[2]

During the affiants' subsequent mobile surveillance of Dozier, he drove his Lexus extremely slowly and on three occasions, he pulled his vehicle over to the side of the road.  *Id.* ¶ 17.  The officers averred that based on their training and experience, they believed Dozier was conducting counter-surveillance, which they attested was a common tactic of narcotics traffickers.  *Id.*[3]

The affidavit states that on May 14, 2024, members of the DEA, and the Stamford and Bridgeport police executed a state search warrant at Dozier's residence of 166 West Liberty Street, Bridgeport.  *Id.* ¶ 21.  He was arrested that same day.  *Id.* ¶ 22.  Also on May 14, law enforcement executed a state search warrant for Dozier's Lexus.  *Id.* ¶ 23.  During the search of the Lexus, the officers located a receipt from U-Haul storage of Bridgeport located at 526 Pine Street in Bridgeport.  *Id.* ¶ 24.  The receipt lists the customer as Benjamin Dozier, 65 Houston Terrace in Stamford with a phone number of 475-201-8597.  *Id.* ¶ 24.  The affiants stated that based on their investigation, 65 Houston Terrace was an old address for Dozier.  *Id.* ¶ 25.  He no longer lived

---

[2] Even if Dozier did not enter Canada's vehicle but only met with him briefly while they both stayed in their vehicles, I would still find probable cause to support the warrant.  The video shows that after Canada's vehicle arrived, he parked next to the Lexus while facing in the opposite direction, but other vehicles obscure the view of the two drivers.  Thus, while it is plain that the two driver's side windows were adjacent to each other, allowing for discreet conversation and even an exchange, it is impossible to tell whether conversation or an exchange actually occurred.  But it would also be impossible to tell if conversation or an exchange occurred if Dozier entered Canada's vehicle for 15 minutes.  Under either version of events, the agents had evidence that, immediately after the two spoke to each other on the phone – a conversation in which Dozier said "I got the Jack now too," ECF No. 290-2 at 4 (USAO 8125) and in which they arranged to meet at "Mom dukes" – the two pulled into the same parking lot at Canada's mother's apartment building, very likely had a brief interaction of some kind, and then left.  That evidence alone supports an inference that the April 7 interaction was drug-related, given the strong evidence in the warrant affidavit that Canada was a drug dealer.  So it is immaterial whether Dozier entered Canada's vehicle and whether the interaction lasted for one minute or fifteen.

[3] I do not rely on the affiants' averment that they observed Dozier checking passing vehicles as they drove by because Dozier asserts that the tinting on the windows in the Lexus was too dark to permit any such observation.

11

there but still listed it as his address on his vehicle registration. *Id.* The receipt indicates that the unit was paid for from 2/3/24 through 3/2/24.[4]

The searches of Dozier's house and vehicle did not reveal any fentanyl or related narcotics evidence. *Id.* ¶ 26. Based on their determination that Dozier was involved in fentanyl trafficking, the affiants believed that he was storing his narcotics supplies as well as monetary proceeds in the U-Haul storage unit #1202. *Id.* The affidavit contained an extensive background discussion of the modus operandi of drug traffickers, and the affiants explained that based on their training, experience, and participation in drug trafficking investigations, storage units, like the one Dozier rented at the U-Haul facility in Bridgeport, are commonly used as stash locations. *Id.* ¶ 26. They noted that the U-Haul unit was less than two miles from Dozier's residence on West Liberty Street in Bridgeport. *Id.* ¶ 28. The affiants explained that narcotic traffickers maintain stash locations close to their residence so that they can have quick access to their narcotics supplies. *Id.*

Armed with the U-Haul storage receipt, the officers conducted further investigation. On May 15, 2024, shortly before the affiants submitted the warrant application, an officer went to the U-Haul facility and spoke to an employee. *Id.* ¶ 30. When the employee was shown a photograph of Dozier, he immediately recognized him and stated that he accessed a unit at the facility almost daily over the past few months. *Id.* Records provided by the employee showed that Dozier accessed his unit approximately 5 minutes before he was observed meeting with Canada. *Id.* The officer viewed surveillance footage of Dozier entering and exiting the unit as recently as May 12. *Id.*

The affidavit also set forth Dozier's criminal history, which included convictions on June 16, 2000 for possession of narcotics; August 5, 2004 for sale of illegal drugs; April 8, 2016 for

---

[4] As noted below, it makes no difference to my finding of probable cause whether these corrected dates are included or whether the incorrect dates in the affidavit are simply omitted.

possession with intent to distribute; August 8, 2017 for sale of narcotics; and April 16, 2021 for possession with intent to distribute. *Id.* ¶ 8.

Even if the dates of the receipt are corrected or alternatively, the incorrect dates are omitted, and even if TFO Martinez's observations in paragraph 29 and the statement that Dozier entered Canada's vehicle on April 7 and met with him for 15 minutes are omitted, the remaining facts set forth in the affidavit, taken together, created a "fair probability," given the totality of the circumstances and common sense, *Gates*, 462 U.S. at 238, that evidence of a crime would be found at the U-Haul storage unit. While the U-Haul receipt itself may have been too "stale" to support a finding of probable cause on May 15, 2024, the officers "freshened" that evidence by conducting further investigation and discovering that, according to the affidavit, Dozier was still using the storage unit on almost a daily basis. Because the defendant has not made a substantial showing that the allegedly false statements were material, no *Franks* hearing is warranted and the motion to suppress the evidence seized from the U-Haul storage unit is denied.

### III. CONCLUSION

For the foregoing reasons, the defendant's motions to suppress (ECF Nos. 238, 325) are DENIED. And because there was probable cause to support the warrant to search the storage unit, the defendant's earlier motion to suppress the defendant's firearm found in the storage unit (ECF No. 217) is also DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
December 18, 2025